IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA

VS. CRIMINAL ACTION 3:06CR51TSL-JCS

JOANN BOURGEOIS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the appeal of Joann Bourgeois of her March 27, 2006 conviction pursuant to 36 C.F.R. § 4.23 (DUI refusal). The government opposes the appeal, and the court, having considered the parties' memoranda and the record in this case, concludes that the appeal is not well taken and thus, that defendant's conviction is due to be affirmed.

On November 12, 2005, around 9:58 p.m., Bourgeois, who had admittedly consumed four to five alcoholic beverages at a wedding earlier in the evening, was stopped at a checkpoint established by Natchez Trace Parkway Park Rangers at the intersection of the Natchez Trace Parkway and a local road.

At trial, Ranger Rachel Strain testified that as she approached Bourgeois' vehicle, she smelled "a very strong odor of an alcoholic beverage" and observed that Bourgeois had bloodshot eyes, slurred speech and was behaving nervously. Additionally, the other Ranger on the scene recovered an open bottle of beer from the vehicle's console. Strain administered the Horizontal Gaze

Nystagmus field sobriety test[1] and concluded that Bourgeois was deficient in each of the six areas. Strain administered a "walk and turn" test and the "stand on one leg" test, and again concluded that Bourgeois did not perform satisfactorily.[2] Finally, Strain requested that Bourgeois take a portable breath test. Bourgeois complied, and after a brief wait for the results, Strain announced

---

[1] An HGN test is conducted by asking the driver to cover one eye and focus the other on an object, usually a pen--held by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision, she watches the driver's eyeball to detect involuntary jerking. The officer then observes: (1) the inability of each eye to track movement smoothly; (2) pronounced nystagmus at maximum deviation; and (3) onset of the nystagmus at an angle less than 45 degrees in relation to the center point.

Young v. City of Brookhaven, 693 So. 2d 1355, 1359 (Miss. 1997) (internal citations omitted).

[2] Regarding this test, Strain testified:

Ms. Bourgeois could not stand as directed and with one foot in front of the other. She had to stand with both feet together. During the test, she did not walk heel to toe in any of her steps, and also when she turned around she stopped to steady herself. During the one leg stand, she swayed before the test began, and that was the conclusion of that test.

Although Strain claimed at trial that Bourgeois had not performed satisfactorily on the HGN or either of these other tests, the video tape of the stop reflects that after Bourgeois had completed these three field tests, Strain assured her that if she passed the portable breath test, the final field test, she would be free to go. Either Strain had concluded at the time that the result of the first three tests was satisfactory, or at least equivocal, which is not what Strain claimed at trial, or she intended to mislead Bourgeois.

to Bourgeois that she was .02 over the legal limit. Strain arrested Bourgeois on suspicion of driving under the influence and transported her to a local police department to administer the Intoxilyzer 8000 test. At the station, Bourgeois refused the test and Strain issued citations for driving under the influence (36 C.F.R. § 4.23), breath test refusal (36 C.F.R. § 4.23)[3], and open

---

[3] Part 4 of Title 36 of the Code of Federal Regulations deals with traffic and vehicle safety within the National Park System. Section 4.1 states:

> The applicability of the regulations in this part is described in § 1.2 of this chapter. The regulations in this part also apply, regardless of land ownership, on all roadways and parking areas within a park area that are open to public traffic and that are under the legislative jurisdiction of the United States.

Section 1.2(a) of Title 36 of the Code of Federal Regulations provides, in part:

> a) The regulations contained in this chapter apply to all persons entering, using, visiting, or otherwise within:
>
> (1) The boundaries of federally owned lands and waters administered by the National Park Service; [and]
>
> (2) The boundaries of lands and waters administered by the National Park Service for public-use purposes pursuant to the terms of a written instrument.

Section 4.23 provides, in part:

> > a) Operating or being in actual physical control of a motor vehicle is prohibited while:
> >
> > (1) Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or
> >
> > (2) The alcohol concentration in the operator's

container violation (36 C.F.R. § 2.35).

At trial, the magistrate judge heard testimony from Strain regarding the administration of the HGN test and viewed the video tape of Strain's stop of Bourgeois and found Bourgeois not guilty of driving under the influence, stating he could not "conclude from the tape that she was impaired. She did better than anybody I've ever seen on that particular test of DUI." However, he found her guilty of DUI refusal and imposed a fine of $1300 and placed her on probation. He further informed Bourgeois that "[t]he State of Mississippi will suspend your license for their purposes for the requisite amount of time, and after you've paid the fine and done that, you will be on non-reporting probation."

On appeal, Bourgeois argues that because Ranger Strain did not

---

> blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath. Provided however, that if State law that applies to operating a motor vehicle while under the influence of alcohol establishes more restrictive limits of alcohol concentration in the operator's blood or breath, those limits supersede the limits specified in this paragraph. . . .
>
> (c) (1) At the request or direction of an authorized person who has probable cause to believe that an operator of a motor vehicle within a park area has violated a provision of paragraph (a) of this section, the operator shall submit to one or more tests of the blood, breath, saliva or urine for the purpose of determining blood alcohol and drug content.

have a reasonable suspicion to demand an Intoxilyzer test, the magistrate judge erred by admitting the fact of her refusal into evidence and by finding her guilty of DUI refusal. She additionally argues that the magistrate judge sentenced her under the wrong statute. Specifically, she argues that "[t]he magistrate judge sentenced Bourgeois under the Assimilated Crimes Act, 18 U.S.C. § 13, where 18 U.S.C. § 3118, enacted by Congress in 1988, specifies the punishment for refusal as loss of driving privileges on federal reservations." For its part, the government contends the magistrate judge correctly found that there was sufficient probable cause to warrant administration of the Intoxilyzer test, which Bourgeois refused. It further maintains that Bourgeois was properly charged and sentenced under § 4.23. The court agrees with the government on both points.

The court first addresses whether the magistrate judge should have suppressed the evidence of the DUI refusal. In reviewing the denial of a motion to suppress, this court employs a two-tiered standard, examining the factual findings of the trial court for clear error, and its ultimate conclusion as to the constitutionality of the law enforcement actions de novo. United States v. Washington, 340 F.3d 222, 226 (5th Cir. 2003). Having reviewed the record in this case, the court concludes that there is no error.

Defendant phrases her argument on this point in terms of

whether Strain had a "reasonable suspicion" to require her to take the Intoxylizer test. Under the law, however, while Strain was required to have *reasonable suspicion* before initiating the field sobriety tests, see Rogala v. District of Columbia, 161 F.3d 44, 52 (D.C. Cir. 1998) (holding that only reasonable suspicion is required to conduct a field sobriety test because it is such a minimal intrusion on the driver), under 4.23(c), Strain was actually required to have *probable cause* to believe that a violation of 4.23(a) had occurred in order to require a blood, urine, salvia or breath test. See 4.23(c)("At the request of an authorized person who has probable cause to believe that an operator of a motor vehicle within the park has violated a provision of paragraph (a), the operator shall submit to one or more tests . . . to determine blood alcohol and drug content). For the reasons that follow, the court concludes that she had both.

Bourgeois' admission that she had been drinking earlier in the day, together with Strain's observations that Bourgeois strongly smelled of alcohol, had bloodshot eyes and had an open container of beer within arm's reach, could have given rise to reasonable suspicion that she was driving while impaired. As Bourgeois correctly points out, the purpose of the field tests is to confirm or dispel the officer's suspicion that an individual is driving while impaired by alcohol. See United States v. Frantz, 177 F. Supp. 2d 760, 764 (S.D. Ohio 2001)("The purpose of the field

sobriety tests is to confirm or disconfirm an initial suspicion of DUI."). Here, there are no results of such tests. According to Bourgeois, because the magistrate judge found that she passed all the physical field sobriety tests, Strain's reasonable suspicion was negated and thus, there certainly could not have been probable cause to require her to take the Intoxylizer test. Bourgeois' argument on this point overlooks the fact that Strain testified that Bourgeois failed not only the HGN test but also registered above the legal limit on the portable breath test. While there may be questions as to the admissibility of either of these tests as substantive evidence of guilt on the DUI charge, both are admissible to determine whether probable cause existed. See United States v. Ironcloud, 171 F.3d 587 (8th Cir. 1999) (collecting cases, portable breath test reliable as screening test to develop probable cause), and Deloach v. City of Starkville, 911 So. 2d 1014, 1017 (Miss. App. 2005) (HGN test results may be used to demonstrate probable cause). Accordingly, despite the fact that Bourgeois flawlessly completed the "walk and turn" test and the "stand on one leg" test, the magistrate judge did not err in concluding that there was probable cause to require Bourgeois to take the Intoxilyzer test as requested by Strain.

Bourgeois, apparently under the misapprehension that she was prosecuted pursuant to the Assimilated Crimes Act, 18 U.S.C. § 13, *et seq.*, next argues that the government sentenced her under

the wrong statute. Specifically, she urges that she should have been sentenced under 18 U.S.C. § 3118. This statute provides:

> (a) Consent.--Whoever operates a motor vehicle in the special maritime and territorial jurisdiction of the United States consents thereby to a chemical test or tests of such person's blood, breath, or urine, if arrested for any offense arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction. The test or tests shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving a motor vehicle upon the special maritime and territorial jurisdiction of the United States while under the influence of drugs or alcohol in violation of the laws of a State, territory, possession, or district.
>
> (b) Effect of Refusal.--Whoever, having consented to a test or tests by reason of subsection (a), refuses to submit to such a test or tests, after having first been advised of the consequences of such a refusal, shall be denied the privilege of operating a motor vehicle upon the special maritime and territorial jurisdiction of the United States during the period of a year commencing on the date of arrest upon which such test or tests was refused, and such refusal may be admitted into evidence in any case arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction. Any person who operates a motor vehicle in the special maritime and territorial jurisdiction of the United States after having been denied such privilege under this subsection shall be treated for the purposes of any civil or criminal proceedings arising out of such operation as operating such vehicle without a license to do so.

Initially, the court observes that although Bourgeois asserts that the magistrate judge sentenced her under the wrong statute, the gist of her argument is that the government prosecuted her under the wrong statute. This argument should have been raised before the trial court and was not. Accordingly, as she has not

preserved this error for appeal, it may be reviewed only for plain error. United States v. Duncan, 191 F.3d 569, 575 (5th Cir. 1999) ("Plain error review applies to claims that were not raised before the trial court.").

Based on the following, the court concludes that prosecution under § 4.23 was not improper. The court's research of this issue has found that § 3118 was enacted as an implied consent statute to aid in the government's prosecution of crimes under the Assimilated Crimes Act.[4] The ACA "provide[s] a set of criminal laws for federal enclaves by the use of the penal law of the local state 'to fill the gaps in federal criminal law.'" United States v. Brown, 608 F.2d 551, 553 (5th Cir. 1979) (internal citations and quotations omitted). "The government can resort to state law for prosecution only if no act of Congress directly makes a defendant's conduct punishable." Id. Here, the enactment of § 4.23(a) precludes prosecution under state law via the ACA.[5] United States

---

[4] The section was enacted on November 18, 1988 and originally codified at 18 U.S.C. § 3117. The original enactment at Pub.L. 100-690, Title VI, § 6477(b)(1) makes clear that the new law is an "Assimilated Crimes Act" amendment.

[5] The government assertion that § 3118 does not apply to prosecutions of crimes occurring in national parks because national parks do not come within the federal government's special maritime and territorial jurisdiction as set out in 18 U.S.C. § 7 is incorrect. In United States v. Magee, 29 F.3d 625 (5th Cir. 1994), the Fifth Circuit affirmed the defendant's conviction under 18 U.S.C. § 1117 (conspiracy to murder). The crime occurred on the Natchez Traceway Parkway and the indictment recited that the

v. Hall, 979 F.2d 320, 322 (3rd Cir. 1992) (collecting cases and concluding that a federal regulation (as contrasted with a statute) operates as an "enactment of Congress" within the meaning of the ACA). According, the magistrate judge did not err by failing to sentence Bourgeois under § 3118.[6]

Based on the foregoing, it is ordered that the conviction of defendant Joanna Bourgeois is affirmed.

SO ORDERED, this the 30th day of July, 2007.

_s/ Tom S. Lee_______________
UNITED STATES DISTRICT JUDGE

---

court's subject matter jurisdiction was premised on 18 U.S.C. § 7(3).

6 Given that prosecutors have the discretion to "choos[e] among statutes that impose different penalties, even if they are violated by the same conduct," United States v. Batchelder, 442 U.S. 114, 125, 99 S.Ct. 2198, 2204-05, 60 L. Ed. 2d 755 (1979), and that § 4.23 has been deemed an enactment of Congress, contrary to defendant's assertion otherwise, it does not "go[] without saying" that a federal criminal statute would necessarily invalidate a federal criminal regulation which purported to regulate the same conduct as the statute.